Case number 17-7169, Kenneth Nove Appellant v. Fireman's Fund Insurance Company Mr. Franklin for the appellant, Mrs. Shuffelberger for the accolade. Thank you, Your Honors, and may it please the Court, Jonathan Franklin for the appellant, District Court's error in granting summary judgment on the question of contract formation despite the existence of material disputes of fact as to whether or not the parties did agree. The District Court found that an oral agreement that potentially was and ended up being worth more than $2 million was entered into in a single phone call between Mr. Kirk, who was FFIC's representative, and Ms. Mew, who was a law firm associate working on Mr. Feld's case. But the parties to that conversation, the only two parties, gave materially different testimony as to what was said during that call. The District Court essentially credited Mr. Kirk's rendition holding that the oral agreement was reached when Ms. Mew allegedly either proposed higher rates than the ones that Mr. Kirk had initially suggested or asked whether Mr. Kirk could do so, and then Mr. Kirk allegedly either accepted her counterproposal or made a new offer that she then accepted. But in her sworn ---- But didn't the District Court have an alternate basis for finding? Yes. And it wasn't limited to the October 4th telephone conversation? Yes. I certainly can get ---- The subsequent correspondence as well? Yes. And I can get into that. Now, if Your Honor wishes, I was going to address the oral agreement first, but if Your Honor would like me to go to that, I will. I will just say on the oral agreement, Ms. Mew's testimony was unequivocal. She never proposed different rates. She said when Mr. Kirk proposed rates that he wanted, she just said nothing. She said she never asked that Mr. ---- she never indicated that Mr. Feld wanted different rates to apply. She was a junior member of the Feld team and simply understood her role as conveying information to Kirk about the case and listening to what he had to say and conveying it to the rest of the team. To get to the alternative argument, there was no unequivocal evidence of a written agreement as one would expect for undertaking of this magnitude. To begin with, and I'll get to the agreement shortly, the budget document shortly, but Mr. Kirk's October 4th email, which he purported to memorialize their conversation, did not refer at all to an agreement and, in fact, used the language that Mr. Kirk said he used when no agreement had been reached, the language being ---- Let me say, Ms. Mew, this will confirm our recent conversation. Yes. We will agree to pay a rate not ---- Right, but he didn't say we have agreed in our call. You agreed that this is what ---- he never said that. The next language he uses is any amount in excess will be the insured's responsibility, and he testified clearly that that was the language that he said he used when no agreement had been reached. And the reason he used that is that what he was trying to do was negotiate a retention agreement with Fulbright to be FFIC's chosen counsel. If he was successful in negotiating that retention agreement, there would be no excess for the client to pay because Fulbright would have executed an agreement with FFIC to be their counsel and would be bound by the terms of that agreement. To get to the budget document, so the district court alternatively held that the budget document, which was sent more than three weeks later after that email, was the acceptance of a contractual offer, but not ---- I think it's important that FFIC didn't even make that argument on summary judgment, and I think with good reason. The budget document on its face ---- Before we get to the budget document, the email attaches litigation and billing guidelines. Yes. And the email says, please note that an initial evaluation report is requested. Yes. And the second document you're about to discuss, is that initial evaluation report? I think that the evaluation report was sent at the same time. It's a different document, though. She was trying to be helpful to Mr. Kirk. But as we know, I believe the evaluation was a separate document that was submitted at the same time. If I can explain my assertion here. Sure. So attached are the litigation and billing guidelines, and it says on page JA 523, preliminary evaluation plan and cost estimate. Within 45 days, you have to submit an itemized budget for the proposed defense. At the bottom of the page, it says a budget setting out a proposed completion rate and the number of hours and the applicable billing rate. And then on page 527, it says fireman's fund and defense counsel must agree on the appropriate hourly rate. Yes. So just to take the argument against you for just one moment, that this letter says we want from you the agreed upon rate. This is what we say the agreed upon rate should be. And we want it within 45 days' response. Then on JA 534 is a response which includes a budget, which includes the budget, the numbers, the hourly rates that they propose in the first, in the opening letter. I think if that's just to put the best light on what the judge is saying, that would be it. Is that right? I don't think the judge relied on the request for a status. And I don't think it is in the appendix. It might be, but I think that was a separate document. The budget was separate from the other. What's the JA 535, which comes after JA 534? Isn't that separate? That's the budget, yes. That's the budget. I believe there was a separate. What I'm saying is I think there was a separate communication from Mr. Mew to Mr. Kirk on that date. The one I'm looking at says at your request and closer with as a proposed budget. Budget, yes. There was also a request for something else, which was this evaluation. No, I understand that. But the opening, if you take the October 4th document as the opener, it asks for an attachment. It asks for a budget, itemized budget. And this is the itemized budget. There's not another itemized budget. That is correct. That is correct. And I think the important thing to note, first of all, is that that cover letter, which is on 534, says it's nonbinding. And what we need here is an acceptance. Wait a second. It doesn't just say it's not a binding representation of the fees and expenses that actually will be incurred in the matter. We ultimately will be guided by our professional judgment to use the time and resources necessary. It doesn't touch rates at all. At the very least, this is a very poorly worded letter. If your goal is to say we don't have an agreement as to rates, it doesn't say that expressly here. We are on summary judgment, Your Honor. And on page 798 of the appendix, Ms. Mew expressly testified that she understood what she was saying was including rates and fees in there. So, again, the question is, can this be resolved on summary judgment? And the 1836 S Street case says quite clearly that where the documents that are alleged to constitute the agreement are themselves susceptible to multiple interpretations. Where does the word rates appear in here? How is this susceptible to another interpretation? She attaches a budget that's based on the rates. Yes. And she says now, you know, this is not binding regarding fees and expenses that actually will be incurred because we get to reserve how much time we get to spend on this. What's subject to dispute, Your Honor, is whether or not there was an intent to be bound on all the material terms of an attorney retention agreement. Why, then, is this budget based on the rates? Why? I don't understand that. I think there's a clear good reason, and the jury could determine this, and that is Mr. Kirk had said, this is the most FFIC is willing to pay. How much is it going to cost us? And she says, well, you've said the most you're willing to pay. Here's what it's going to cost you at that rate, if your rates are used. I think it's entirely reasonable to be helpful to Mr. Kirk in deciding what it might cost him at what he has said is the most that he's willing to pay. It does not mean that Fulbright agreed, and there's no statement here of any offer, there's no statement of any acceptance, and there's no statement here of any binding intent. So I think it's clear that's why, at least in my view, why FFIC never raised this on summary judgment. What they said on summary judgment is that this budget document somehow confirmed the earlier oral agreement. See, she used the rates, we must have had an agreement. I don't think you can look at this document. We think, frankly, it can't even reasonably be interpreted as an acceptance of a contractual offer. And if I might also add, again, what Mr. Kirk was trying to do here was to negotiate. I see I'm close to my rebuttal time. If I can keep going, I'd appreciate it. What Mr. Kirk was trying to do here was to negotiate a retention agreement with his chosen counsel, what would be his chosen counsel. And that agreement, even if you were to look just at this as just except for the purposes of argument that this is an agreement on rates. There were numerous, and it's not, there were numerous other terms that were left unresolved. I noticed that argument in the briefs, but district court doesn't appear to address it. Did you raise below the argument that there are a lot of other material terms? Absolutely, Your Honor, yes. Could you cite that for me? When you come back, I'm on rebuttal. If you could tell me where in the docket it shows that. Not now. Yes, okay, yes. And that's also under the D.C. law question affected to what is a material term. And so what we have here is an exchange of correspondence after the budget document in which FFIC disputes virtually everything that's in the budget document. It says, for example, we're going to need prior approval for any hours more than four hours in the case. We're going to need prior approval for any. And those are objected to in the December 8th letter, but nothing said about rates, right? Well, the December, I'm just saying now I'm moving on to an argument that even if you want to assume and we don't agree that there was an agreement on rates, and there wasn't. And, in fact, our Fulbright's. But December 8th you make these objections to the proposed budget and nothing is said about rates. It's not true that nothing was said. What the Fulbright said at that time was Mr. Feld is, FFIC is currently, using the word currently, paying only half of the rates, notwithstanding the insurance that he had purchased, Mr. Feld has purchased from FFIC, and that was in the Joyner letter. What that jury could conclude there and what her understanding, I think, clearly was, was we're, that's the current payment. But he has insurance that he's bought. We already have a contract for insurance, and we will deal with that, and we did deal with that later. We filed the lawsuit here. But it's not an agreement. And the question is here for the district court and for this court is where's the agreement? Where's the intent to be bound as to all material terms? And we submit you cannot reasonably, much less unambiguously, look at the budget document as constituting that intent. Are there further questions? Thank you, Your Honor. Thank you, Your Honor. May it please the Court. Tom Schaufelberger on behalf of Fireman's Fund Insurance Company. What I'd like to do is first turn to the budget issue, which took up a lot of the discussion earlier. The, basically, the context is very important here. The budget didn't come out of blue. The budget came after a couple of conversations which were memorialized by Mr. Kirk. And then Carolyn Mews sent the budget. She was described by Mr. Franklin as a junior associate. But she didn't send it on her own volition. This budget was sent after five other individuals at Fulbright looked at it and after it was sent to Mr. Feld twice. And that's evident from the privilege document that is in the record showing that. This was a document. And also, what is the purpose of a budget? The purpose of a budget is to let a party know how much money it is anticipated will be spent on an undertaking. This undertaking was the events of a single plaintiff, Mr. Feld's sister, personal injury action. And the budget was designed to indicate, to give Fireman's Fund, I think it's pretty obvious to anybody dealing with a budget, an idea of how much would, in fact, be spent. Not how much would be spent on some hypothetical, but how much would be spent on the actual fees and costs that would be charged in this case. In that context, it's crystal clear that this was an acceptance. And as your Honor noted, there was nothing in this cover letter, despite much noise made, to suggest for a second that hourly rates were not as agreed. And indeed, that never shows up until two years later, after the underlying trial is done. And apparently, at that time, we had buyer's remorse kick in, and there was an attempt to dispute the rates charged for the first time. And that is the discrete agreement we're dealing with, an hourly rate agreement, how much Fulbright's attorneys would charge for their hours of time. It wasn't about how many hours. It wasn't about cost, per se. It wasn't about any other aspect of it. The agreement we're talking about is the hourly rate agreement. Other aspects of this case that might have involved other aspects of the billing guidelines are not before the court. They were resolved very early on in this context. Well, they were resolved in the underlying action before this appeal and before we had a final order in that case. What is your best evidence of an offer of the contractual rates? The best evidence of the offer of the contractual rates, and we'll take it one of two ways, but the best evidence, I'll answer it if I can, just the way Judge Bates did. I think Judge Bates said that the budget was at the latest when the agreement was reached because that was the time at which Fulbright and Feld, through Ms. Mew, had indeed accepted Charles Kurtz's offer. That's not my question. My question is what's your best evidence of an offer that was being accepted? When was this, in your view, reported offer advanced in clear terms so that the accepting party knew exactly what he or she was responding to? The best evidence is the budget being sent back. That is, the offer is the email that Mr. Kurtz sends to Ms. Mew indicating what rates they discussed and what rates Fireman's Fund would pay and that the overage would be the— Just to be clear, that's JA 521? You're saying that's the offer? Thank you, Your Honor. I'm just asking. Is that right? There's a question mark at the end of my sentence. Let me pull this out. That's the October 4th email. Is that what you're talking about? Yes, that's the offer, Your Honor, frankly, in light most favorable to Fulbright in this case and Feld. There is an argument, and I think a correct argument also, that that is a document memorializing the agreement that Ms. Mew had with Mr. Kirk about what the rates would be. I mean, these are really inconsistent theories. I mean, I think, in my own view, that just hurts your case more because it shows the ambiguities. You've now flipped back to the original conversation. I guess that's what I heard you say, the original conversation, which certainly doesn't look like an agreement to me. So I'm not sure. That's why the first thing I'm trying to figure out is where do you think there's an offer? It doesn't look like anything I learned in law school. So I don't get—before you have an acceptance, you can't have an acceptance in the blue. It's got to be to an offer, and I'm struggling to find what I understood to be a valid contractual offer. Here it is. Here are the terms of the deal at A, B, C, and D, all of them, and this is it. You accept it or not. Where is that? You think it's the JA 521? I think it occurred during the conversation earlier, which is memorialized in JA 521, was the offer. So if there's a problem about the prior conversations, then your whole argument fails, right? No, Your Honor. If the prior conversation just doesn't give you the foundation you want, then you really don't have the offer. You are saying what I thought you were saying. You're resting on what I think is very soft ground. You're saying the prior conversation is critical to your position. The prior conversation doesn't look like it proves anything to me. No, Your Honor. I'm suggesting alternative grounds, each of which allows us to prevail. That's not what you just said. Well, I wish to correct it, Your Honor. I apologize if I misspoke. Why don't you tell me again what your theory is and what your answer is to my question, which was five minutes ago. What's the offer to which you think you are pointing which confirms the contractual arrangement? Because I don't mean to be glib. We all went to law school, and we knew what offers and acceptance were. This isn't even close to the paradigm. That doesn't mean the paradigm is the only way, but it's not close, so I'm not getting what you're talking about. I understand your point, Your Honor. I think for purposes of this argument, JA 521 is the offer, and the budget coming back is the acceptance.  I think we've gone through the context pretty thoroughly in the briefing, and I'll spare the Court going through that again. Unless Your Honors have any additional questions, I'll end my argument at that point. Hearing none. Thank you, Your Honor. Does Mr. Felds, counsel, have any time? Okay. Do you want to come up? Maybe you can answer that other question that I asked you. This was a question of whether the more general argument about other issues that were required for an agreement. Thank you, Your Honor. First of all, I'm a little hamstrung here in the sense that the other side, I don't believe, has raised any argument as to our not having preserved an issue. I'm just asking. I know. I'm just saying. I'm just asking. I know. I understand. I'm also hamstrung a little bit by all the memoranda are not in the Joint Appendix in their entirety, but I do have the page right now, it's page 657 of the Joint Appendix, where we were in our summary judgment motion and we phrased it in terms of the offer. We said even if FFIC has made an offer, the material terms of any such offer were never stated. And I think that goes to the point here that there was not a meeting of the minds of all the material terms of the proposed arrangement. And that does go somewhat to Judge Edwards' questioning about an offer. There was not an understanding on the part of Fulbright that this was an offer. This was simply what FFIC stated was the most it would be willing to pay. Mr. Kirk used the language that he used when there was no agreement, and that is that the excess will be the client's responsibility. The parties simply had not agreed on anything at that time. And then, of course, we have the subsequent correspondence that even the district court said was a mixed bag. I think if you look at all the cases that we've cited, Strauss, the Kramer case, the other cases, most of which were bench trials, by the way, there just simply isn't a way for the court to say this is an undisputed issue of fact. There were too many things that were left up in the air. We think, frankly, the most reasonable interpretation is that there was simply no agreement. The rates were left with FFIC paying what it agreed, what it thought was going to be the most that it would pay. So if we agreed with you, what happens to this case? What's the next step? The next step, I think, would be a trial on the remaining issues. If the court agrees with us on this agreement issue, then the trial would involve, among other things. What would the issue be there? What are reasonable costs? Well, it would be, first of all, I think, unless we were able to subsequently First, there would be a trial on whether there was a contract. Yes. Then, if you want that, you would then get the contract. Yes. I think that ultimately, no matter how the court resolves it, unfortunately But wouldn't that trial be over the meaning of reasonable costs? Reasonable rates. Reasonable fees. Reasonable rates. Yes. It would involve that as well. And that, I think, is unfortunately, I'd love to say we can get out of this entirely, but I think that in any event, that was a reserved issue no matter what. So if the court says that, as I think we should, that the question of an agreement is up in the air, then also the next question would be if the jury finds no agreement, which we think they shouldn't, what are the reasonable costs? And we think we would prevail on that because our rates, the Fulbright's rates, were reasonable for the market in this area. We don't have any of that. We don't have that. That's not an issue for this court. And then I think that on the consideration point also, that it would still require a determination of the reasonableness of the rates. And we're fully prepared to litigate that issue and win it. Further questions? No. All right. Take the matter under consideration. Thank you. Thank you.
judges: Garland, Griffith, Edwards